**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)**

| | |
|---|---|
| **EAGLEBANK**<br>7830 Old Georgetown Road, Third Floor<br>Bethesda, Maryland  20814<br><br>        **Plaintiff**<br><br>v.<br><br>**FEDERAL INSURANCE COMPANY**<br>**Capital Center**<br>**251 North Illinois, Suite 1100**<br>**Indianapolis, IN 46204**<br><br>        <u>**WITH SERVICE UPON**</u>**:**<br>        **State of Maryland**<br>        **Insurance Commissioner**<br>        **200 St. Paul Place, Suite 2700**<br>        **Baltimore, Maryland 21202**<br><br>        **Defendant** | )<br>)<br>)<br>)<br>)<br>)<br>)       **Case No.** _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## <u>COMPLAINT</u>

Plaintiff, EagleBank ("EagleBank"), by and through its undersigned counsel, and for its complaint against Defendant Federal Insurance Company ("Federal"), states and alleges as follows:

### <u>The Parties</u>

1. EagleBank is a Maryland corporation that maintains its principal place of business at 7830 Old Georgetown Road, Third Floor, Bethesda, Maryland 20814.

2. Upon information and belief, Federal is a national insurance company and is an Indiana corporation with its principal place of business at Capital Center, 251 North Illinois, Suite 1100, Indianapolis, IN 46204.

**Jurisdiction and Venue**

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 based on diversity of citizenship of the parties. The amount in controversy exceeds $75,000.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

**Nature of the Action**

5. This is an insurance coverage action in which EagleBank seeks a declaration of its rights under the BPL for Financial Institutions Insurance Policy No. 8224-6965 (the "Policy") issued by Federal. EagleBank also seeks damages from Federal for breach of contract resulting from Federal's failure to honor its obligations under the Policy.

**Background**

6. On or about March 30, 2011, GlassTech Solutions, LLC ("GlassTech") purchased substantially all of the assets of GlassTech, LLC d/b/a EDCO Glass Systems.

7. EagleBank lent GlassTech approximately $3,000,000.00, which loans were secured by substantially all of GlassTech's assets.

8. In June, 2011, Randy Dewar ("Dewar"), GlassTech's owner, told Brandon Whitacre ("Whitacre"), a loan officer at EagleBank, that GlassTech had been awarded a job requiring bonding and needed a $1,000,000 letter of credit. Whitacre failed to discuss this request with his superiors at EagleBank or to input any information into EagleBank's system.

9. Dewar discussed with Whitacre obtaining bonding from United States Surety Company ("US Surety").

10. Dewar sent Whitacre a letter of credit template provided by US Surety and stated that he needed to obtain a letter of credit as collateral for a bond. A copy of the letter of credit is attached hereto as <u>Exhibit 1</u>.

11. On July 21, 2011, Whitacre[1] confirmed to Dewar that EagleBank was willing to assist in GlassTech's future bonding needs via a bank letter of credit.

12. On August 3, 2011, Dewar sent Whitacre the same US Surety letter of credit template as before.

13. On August 9, 2011, Whitacre sent GlassTech a letter of credit application which GlassTech returned on August 12, 2011.

14. Thereafter, Whitacre, an EagleBank employee, and US Surety, through its employees and agents, exchanged numerous comments regarding the draft letter of credit, as evidenced by the electronic mails attached hereto as Exhibit 2.

15. The letter of credit was signed on August 23, 2011 (the "Letter of Credit") and was mailed to US Surety.

16. Whitacre was not authorized to issue a letter of credit on EagleBank's behalf and did not follow the appropriate bank procedures.

17. The first time EagleBank learned about the Letter of Credit was when US Surety made a demand for payment in May, 2012.

18. After US Surety demanded payment on account of the Letter of Credit, EagleBank put Federal on notice of a claim that had been made. See Exhibit 3 attached hereto.

19. After EagleBank refused to honor the Letter of Credit, US Surety sued EagleBank in the Circuit Court for Montgomery County, Maryland (the "Lawsuit").

20. At all relevant times, EagleBank kept Federal advised of the status of the Lawsuit.

21. After extensive discovery and several days of trial, the Court ruled in US Surety's favor on the basis that Whitacre had apparent authority to issue the Letter of Credit for EagleBank.

---

[1] Whitacre did this without authorization from EagleBank and failed to follow EagleBank's procedures.

22. The Court entered a judgment in US Surety's favor in the amount of $1,187,611.70 (the "Judgment").

23. EagleBank is the named insured under the Policy purchased from Federal that provides defense and indemnity coverage for professional services.

24. EagleBank kept Federal informed of the progress and development of the Lawsuit and about the prospects of settlement and the eventual outcome of the Lawsuit.

25. After Federal's repeated refusal to honor its obligations under the Policy, EagleBank satisfied the Judgment.

26. EagleBank paid US Surety the sum of $1,187,611.70, and expended other amounts in excess of the Judgment, including, but not limited to, attorneys' fees and defense costs.

27. The Judgment and other amounts paid to defend against and settle the Underlying Action are covered under the Policy.

28. Federal has refused and failed to repay the amounts that EagleBank paid under the Judgment and to defend against and settle the Lawsuit, as Federal is obligated to do under the Policy.

## The Primary Insurance Coverage Sold by Federal

29. The Policy Federal sold to EagleBank covers the policy period from December 1, 2011 through December 1, 2012.  The Policy has a One Million Dollar ($1,000,000.00) limit of liability subject to a One Hundred Thousand Dollar ($100,000.00) deductible.  A true and correct copy of the Policy is attached hereto as Exhibit 4.

30. The Policy provides coverage for "Loss which the Insureds shall become legally obligated to pay as a result of any Claim first made against the Insureds during the Policy Period

arising out of any Wrongful Act committed by the Insureds or any person or entity whose acts or omissions the Insureds are or alleged to be legally liable during or prior to the Policy Period while performing Professional Services including failure to perform Professional Services."

31. Loss is defined as "the amount that an **Insured** becomes legally obligated to pay on account of any covered **Claim**, including but not limited to damages (including punitive or exemplary damages if and to the extent that such punitive and exemplary damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages provided such jurisdiction has a substantial relationship to the relevant insured, to the Company, or to the **Claim** giving rise to the damages), judgments, settlements, pre-judgment and post-judgment interest and **Defense Costs**."

32. Insured includes EagleBank and Whitacre.

33. Under the Lending Liability Coverage Endorsement to the Policy the term "**Claim** is replaced with **Lending Claim** wherever it appears in this Policy."

34. Wrongful Act is defined as "any error, misstatement, misleading statement, act, omission, neglect or breach of duty committed, attempted, or allegedly committed or attempted, before or during the **Policy Period**, by any **Insured** which arises solely from the performance of or the failure to perform **Lending Services**."

35. Lending Services is defined as "any act performed by an **Insured** for a **Lending Customer** arising from the extending or refusal to extend credit or granting or refusal to grant a loan or any transaction in the nature of a loan…."

36. Brandon Whitacre's actions in negotiating and executing the Letter of Credit resulting in a judgment against EagleBank for $1 million, plus interest and fees was a Wrongful Act under the Policy that resulted in a Loss that is covered under the Policy.

37. The Lending Liability Insuring Clause states that Federal "shall pay, on behalf of an **Insured**, **Loss** on account of any **Lending Claim** first made against such **Insured** during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed by an **Insured** while performing **Lending Services**." Lending Claim is defined as "6(b)(1) a written demand for monetary damages; (2) a civil proceeding commenced by the service of a complaint or similar pleading…brought by or on behalf of a **Lending Customer** against an **Insured** for a **Wrongful Act**, including any appeal therefrom.…"

38. U.S. Surety is EagleBank's Lending Customer. Lending Customer is defined as "any person or entity to which an **extension of credit**, an agreement to extend credit, or refusal to extend credit was made or negotiated on behalf of the Organization."

39. An extension of credit is the making or renewal of any loan or extending credit in any way and includes the issuance of a letter of credit.

40. In light of the Letter of Credit, the Court found in *United States Surety Company v. EagleBank*, Case No. 363848V, in the Circuit Court for Montgomery County, Maryland, that EagleBank extended credit to U.S. Surety.

41. U.S. Surety is EagleBank's Lending Customer and EagleBank is covered under the Policy.

42. The Policy does not contain any provision excluding or excepting coverage for the amounts paid by EagleBank in defending and settling the Lawsuit.

43. EagleBank has paid in full all premiums due under the Policy and has otherwise complied with all applicable conditions precedent, terms, requirements and obligations under the Policy.

## Count I
### (Declaratory Judgment Regarding the Policy)

44. EagleBank repeats and re-alleges paragraphs 1 through 43 of the Complaint as if fully set forth herein.

45. EagleBank seeks a declaratory judgment for the purpose of determining a question of actual controversy between the parties regarding coverage under the Policy.

46. EagleBank contends that Federal has a contractual obligation to reimburse EagleBank for the defense costs incurred and to indemnify EagleBank for the settlements entered in connection with the Lawsuit, and has demanded payment of the same from Federal.

47. Federal denies that it has obligations under the Policy to indemnify EagleBank for the costs incurred in connection with the Underlying Action.

48. By reason of the foregoing, an actual and justiciable controversy exists between EagleBank and Federal regarding the obligation to reimburse EagleBank for the defense costs incurred and the settlements entered in connection with the Lawsuit.

49. As a result, EagleBank seeks a judicial determination by this Court that Federal is obligated to reimburse such defense and payment costs.

## Count II
### (Breach of Contract)

50. EagleBank repeats and re-alleges paragraphs 1 through 49 of the Complaint as if fully set forth herein.

51. The amount that EagleBank paid in settlement and defense of the Lawsuit falls within the definition of Loss under the Policy and is covered under the Policy.

52. Federal has refused to provide coverage under the Policy and has refused to reimburse EagleBank for the amounts it has paid US Surety.

53. Federal's failure and refusal to provide coverage under the Policy is wrongful and constitutes a breach of contract.

54. As a result of Federal's refusal, EagleBank has paid the sum of $1,187,611.70, plus has incurred legal fees of $164,855.66.

55. By reason of the foregoing, Federal is liable to EagleBank for damages in the amount of $1,187,611.70, plus $164,855.66 in attorneys' fees that EagleBank paid to defend the Lawsuit.

**WHEREFORE**, EagleBank prays for judgment as follows:

1. With respect to Count I (Declaratory Judgment Regarding the Policy), that this Court (i) enter a declaratory judgment that Federal must reimburse all defense costs incurred and settlement amounts paid in connection with the Lawsuit, subject to any deductibles, policy limits and underlying insurance obligations; and (ii) enter a declaratory judgment that Federal must pay all other damages caused by, or resulting from, Federal's breach of the Policy, including consequential damages;

2. With respect to Count II (Breach of Contract for the Policy), that this Court enter a judgment for breach of contract against Federal, awarding compensatory damages in an amount established by the evidence, including all defense costs and settlements associated with the Underlying Action; consequential damages; and attorneys' fees, costs and disbursements that EagleBank has incurred to date and may incur in the future in connection with prosecuting this action to recover insurance; and

3. With respect to all causes of action, that this Court: (i) award EagleBank all reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action; (ii) award

EagleBank pre-judgment and post-judgment interest, as provided by law; and (iii) provide such other and further relief as this Honorable Court may deem just and proper.

        Respectfully submitted,

        **SHULMAN, ROGERS, GANDAL,**
        **PORDY & ECKER, P.A.**

By:   /s/ Michael J. Lichtenstein
        Michael J. Lichtenstein, Esquire
        Federal Bar No. 05604
        12505 Park Potomac Avenue, Sixth Floor
        Potomac, Maryland 20854
        TEL:  (301) 230-5231
        FAX:  (301) 230-2891
        Email: mjl@shulmanrogers.com

        *Attorney for Plaintiff*

Dated:  January 6, 2014

F: 113852.00364
4036087_1.docx